IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| CAROL BELCHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:07-CV-285 |
| ) | |
| SERVICE CORPORATION ) | |
| INTERNATIONAL, a/k/a SCI, ) | |
| SCI MANAGEMENT CORPORATION, ) | |
| and SCI TENNESSEE FUNERAL ) | |
| SERVICES, INC., d/b/a ) | |
| EAST LAWN FUNERAL HOME, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

This age and gender discrimination case is before the court on defendants' motion for summary judgment [doc. 20]. The motion has been fully briefed and is ripe for the court's consideration. For the reasons that follow, the motion will be denied.

I.

*Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by demonstrating that its opponent has

failed to establish an essential element of that party's case for which it bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence in support of its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255.

II.

*Background*

Plaintiff is female and was born in 1942. She began working in the funeral business in 1964. Plaintiff worked for defendants from 1991 through 2006 as a general manager and as a funeral director. Defendants terminated her employment on February 7, 2006, and replaced her as "funeral director in charge" with 23 year-old male Anthony Harris.

Following her termination, plaintiff filed a Charge of Discrimination with the Tennessee Human Rights Commission. After receiving her right to sue letter, plaintiff initiated the present civil action. She contends that she was fired because of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and/or

2

because of her gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Defendants Service Corporation International and SCI Management Corporation operate numerous funeral homes including defendant East Lawn Funeral Home and Cemetery ("East Lawn"), at which plaintiff worked as general manager beginning in 1997. In 2004, defendants' market manager Gene Davis told plaintiff that he believed she was "struggling" as a general manager, and that defendants' market director Jim Kriegshauser was "disappointed" in her performance.

By an apparently mutual agreement, plaintiff was then demoted to a funeral director position at East Lawn. She was asked to continue performing certain general manager duties because she had a state funeral director's license and her replacement did not. Since 2004, East Lawn has had a series of general managers including Veronica Quina (Davis's daughter) and, beginning in late 2005, Richard Osborn.

In July 2005, Quina presented plaintiff with a performance review. Plaintiff was graded as "needs improvement" in 11 of 16 categories. According to plaintiff's uncontroverted affidavit, Quina did not discuss the evaluation with her, nor did she tell plaintiff that her job was in jeopardy.

On February 7, 2006, Davis terminated plaintiff. Again according to plaintiff's uncontroverted affidavit, she

asked why I was being fired. Davis told me because of FTC [Federal Trade Commission] rules and company policy violations. When I asked Davis which FTC rules I had broken and which policies I had violated, Davis told me that he "didn't have to discuss that."

Attached to defendants' summary judgment briefing is the declaration of market director Kriegshauser, who states that he received a email from Davis on February 6, 2006, "detailing several infractions committed by Ms. Belcher and requesting authorization to immediately terminate her employment." In his email, Davis wrote in part,

> I have closely analyzed a personnel issue at Eastlawn [sic] . . . and I am very concerned. It has come to my attention that Carol Belcher has repeatedly violated company policy, disregarded company procedures, developed a repeated pattern of avoiding legal requirements, refuses to be a team player and foster a healthy work environment.
>
> Of great concern to me is Carol's pattern of disregarding legal requirements. We have received two citations from regulatory agencies due to her actions. The department of vital statistics issued a citation because the death certificates were not being submitted timely. Carol was responsible for ensuring timely submission of the death certificates. Also when the board of funeral directors inspected her location, they discovered the ID tag on a body in the chapel was not properly completed. Carol was responsible for completing the tag. . . . In addition to the state regulatory problems, she has repeatedly ignored the FTC requirements under the funeral rule by deviating from the price lists and manipulating the statement of funeral goods and services. It is my understanding that to avoid company policy that requires approval of discounts, she has been omitting items from the statements in order to conceal the discount. This causes me great concern because of its FTC issues.
>
> . . .

4

> Carol is simply not a team player and impairs the work environment rather than improve it. This is evident by her failure to follow company procedures regarding work schedules. As recently as three weeks ago she told another employee that she could not work the evening that she was scheduled, so Carol asked that the employee work in her place. She did not get approval from her manager to be off that night. . . .
>
> Unfortunately, even our client families are being harmed by her actions. On at least one occasion, it has been brought to out [sic] attention that Carol did not notify the family service counselor on weekend duty that a family was coming in . . ., so the family had to come back the next day.

Kriegshauser then "reviewed documents" from plaintiff's personnel file. Attached to his declaration as exhibits 2 through 36 are "several memoranda and other documents from various verbal and written warnings resulting from infractions committed by" plaintiff. Kriegshauser does not specify which of these documents were before him at the time, or which of them he reviewed. Kriegshauser further declares that he "consulted and reviewed the material [the unspecified "documents"] with [defendants'] Human Resources Department and Legal Department. Thereafter, the decision was made to immediately terminate Ms. Belcher's employment for cause." At Kriegshauser's direction, Davis terminated plaintiff the following day.

III.

*Analysis*

As noted, plaintiff alleges that defendants terminated her on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964. Title VII makes it unlawful for most employers to "discharge any individual . . . because of such individual's . . . sex .

5

. . ." 42 U.S.C. § 2000e-2(a)(1). Plaintiff also alleges that she was terminated because of her age in violation of the ADEA, which prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a).

### A. *Gross v. FBL Financial Services*

In their reply brief, defendants argue that plaintiff must abandon either her age claim or her gender claim in light of a recent Supreme Court decision. In *Gross v. FBL Financial Services*, 129 S. Ct. 2343, 2350-51 (2009), the Court clarified that an ADEA claimant bears the burden of establishing that her age was the "but-for" cause of the employer's adverse action.

While *Gross* arguably makes it impossible for a plaintiff to ultimately recover on an age and a gender discrimination claim in the same case, the undersigned does not read *Gross* as taking away a litigant's right to plead alternate theories under the Federal Rules. *See* Fed. R. Civ. P. 8(d)(2), (3). Plaintiff will accordingly be allowed to proceed, at least for the time being, with her Title VII and ADEA claims. The court will likely revisit this issue before trial, and the parties may be directed to submit further briefing once discovery has concluded.

### B. *McDonnell Douglas*

At summary judgment, the court evaluates a Title VII claimant's inferential and circumstantial evidence using the familiar *McDonnell Douglas* burden-shifting approach.

6

*See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[1]  Within the Sixth Circuit, claims brought under the ADEA are also analyzed using the *McDonnell Douglas* framework. *See Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009).

In *McDonnell Douglas* the Supreme Court established "the order and allocation of proof in a private, non-class action challenging employment discrimination . . . ." *McDonnell Douglas*, 411 U.S. at 800-03.  Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination. *Id.* at 802.  The elements necessary to make a *prima facie* showing will vary depending on the facts of each case and the type of discrimination alleged. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575-76 (1978). "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007).

Plaintiffs bear the burden of persuasion throughout the entire process. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000).  If a plaintiff is able to establish her *prima facie* case, the burden then shifts to the employer to "articulate

---

[1] According to plaintiff, general manager Osborn twice asked her in January 2006 how long she planned to continue working.  Plaintiff does not argue that Osborn's questioning constitutes *direct* evidence of age discrimination. *See DiCarlo v. Potter*, 358 F.3d 408, 416 (6th Cir. 2004) (no direct evidence of discrimination in isolated and ambiguous comments made by an individual not involved in the termination decision).

7

some legitimate, nondiscriminatory reason" for the adverse employment action. *Id*. at 792-93 (citation omitted). If the employer successfully provides such a reason, *McDonnell Douglas*'s regime then places the final burden on the plaintiff to "demonstrate by competent evidence" that the employer's proffered reason is in fact merely a pretext. *McDonnell Douglas*, 411 U.S. at 805. Pretext may be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

To establish a prima facie case of age or gender discrimination, a plaintiff may show that: (1) she was a member of the protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for her position; and (4) she was replaced by someone outside the protected class. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 349 (6th Cir. 1997). The present defendants do not contest, and the court concludes, that plaintiff has stated *prima facie* claims. She is a female over the age of 40, she was fired, she has more than 40 years experience in the funeral business, and she was replaced by a 23 year-old male. Next, plaintiff does not contest, and the court concludes, that Kriegshauser's declaration on its face articulates a legitimate nondiscriminatory reason for plaintiff's firing. The pending motion thus turns on whether plaintiff has met her burden of raising a genuine issue of material fact with respect to whether defendants' proffered justification is pretextual. The undersigned concludes that plaintiff has met that burden.

8

C. Pretext

The court is quite mindful that it does not sit as a "'super personnel department,' overseeing and second guessing employers' business decisions." *See Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627-28 (6th Cir. 2006) (citation omitted). The court further recognizes that a "plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *See Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

Similarly, a claimant may not establish pretext merely by questioning the soundness of her employer's business judgment. *See Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986). The Sixth Circuit has adopted the "honest belief" rule concerning an employer's proffered reason for discharging an employee. *See, e.g., Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998). "An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied 'on the particularized facts that were before it at the time the decision was made.'" *Majewski v. Automatic Data Processing*, 274 F.3d 1106, 1117 (6th Cir. 2001) (quoting *Smith*, 155 F.3d at 807). "An employer need not prove that complaints or perceptions about an employee are true before using such complaints as a basis for action. As long as an employer honestly believes complaints about an employee are true, such complaints can serve as a justification for an employment action and will not be regarded as pretextual." *Koval v. Dow Jones & Co.*, 86

9

F. App'x 61, 67-68 (6th Cir. 2004) (citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001)). The plaintiff then has the opportunity to show that the employer's belief was not honestly held. *Smith*, 155 F.3d at 807.

With these principles in mind, the court turns to the rationale advanced by defendants. The court again notes the carefully crafted language of Kriegshauser's declaration, which states merely that he reviewed "documents" from plaintiff's file, rather than affirming that he reviewed *all* of the documents or explaining *which* of the documents led to his decision. Kriegshauser's perplexing declaration stands in contrast to defendants' summary judgment briefing which cites virtually every document supplied from plaintiff's file in an apparent invitation for the court to engage in a *post hoc* performance review. *Cf. McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation omitted); *see also Smith*, 155 F.3d at 807 ("[I]n order for an employer's proffered non-discriminatory basis for its employment action to be considered honestly held, the employer must be able to establish its reliance on the *particularized facts* that were before it at the time the decision was made.") (emphasis added). As plaintiff argues, "an employer's strategy of simply tossing out a number of reasons to support its employment action in the hope that one of them will 'stick' could easily backfire. . . . [A] multitude of suspicious explanations may itself suggest that the

10

employer's investigatory process was so questionable that any application of the 'honest belief' rule is inappropriate." *Smith*, 155 F.3d at 809.

Defendants do not argue that any of the documents before the court would have independently led to plaintiff's termination. Instead, all of the documents have been "simply toss[ed] out" for the court's review. "Thus, in order to survive summary judgment, [plaintiff] need not show that all of the factors articulated by [defendants] are false but rather, only that some of the factors are false and a mere pretext for discrimination." *Asmo v. Keane, Inc.*, 471 F.3d 588, 596 (6th Cir. 2006).

The court will not discuss every alleged disciplinary event or shortcoming cited in defendants' briefing, because defendants themselves have not endeavored to specify which of those led to plaintiff's termination. Of the evidence submitted by defendants, Davis's email offers the most specific rationale for the firing, because certain issues and incidents are specified therein. As summarized below, the court concludes that plaintiff has met her burden of establishing genuine issues of material fact with respect to whether a number of the considerations cited by defendants are pretextual.

> 1. <u>Incomplete ID tag on corpse</u>: According to plaintiff's uncontroverted affidavit, the embalmer, Hayter "Buddy" Brown, was ultimately responsibility for completing the ID tag. Nonetheless, plaintiff wrote a letter to the state board taking supervisory responsibility for the error. According to plaintiff, Brown was not terminated for this offense.
>
> 2. <u>Funeral Rule</u>: Davis expressed his concern that plaintiff "has repeatedly ignored the FTC requirements under the funeral rule by deviating" *below* defendants' listed pricing, thereby risking regulatory consequences. At her deposition, however, plaintiff testified that the FTC's Funeral Rule only

11

prohibits charging *more than* listed pricing. Her testimony appears consistent with defendants' December 1, 1996 "FTC Funeral Rule Compliance Memorandum" which explains, "*The Rule does not prevent offering a discount* when there are special circumstances, but prices may not be inflated artificially in order to offer all or most customers a discount." (emphasis added). Davis's email accusations thus appears out of step with defendants' training documents.

3. <u>Switching shifts with another employee</u>: According to plaintiff's affidavit, she switched shifts with Timothy Harris, defendants' other funeral director who ultimately replaced her. According to plaintiff, general manager Osborn had given approval for her and Harris to switch shifts if they both agreed. Plaintiff has reviewed Harris's personnel file and it contains no criticism or reprimand of Harris for switching shifts with plaintiff.

4. <u>Not notifying family service counselor</u>: Davis criticized plaintiff for "harming" a family by not notifying defendants' family services counselor that the family needed to meet with him. In her affidavit, plaintiff states that she did in fact attempt to notify the family service counselor by paging him (he did not respond to the page) and by leaving a message at his home with his mother (the counselor had not come home the night before). According to plaintiff, she met with the family herself and the family was not inconvenienced.

5. Davis wrote, "All of these issues have been discussed with Carol." In her affidavit, however, plaintiff states that virtually none of the issues were discussed with her.

Cumulatively, plaintiff's evidence raises genuine issues of material fact as to pretext. *See Asmo*, 471 F.3d at 596. The protection afforded by the honest belief rule "is not automatic." *Smith*, 155 F.3d at 807.

> Although courts should resist attempting to micro-manage the process used by employers in making their employment decisions, neither should they blindly assume that an employer's description of its reasons is honest. When the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process

"unworthy of credence," then any reliance placed by the employer in such a process cannot be said to be honestly held.

*Id.* at 807-08.

## IV.

### *Conclusion*

For the reasons cited herein, plaintiff has met her burden under *McDonnell Douglas* and *Burdine* of raising genuine issues of material fact as to whether "the employer's proffered explanation is unworthy of credence." Defendants' summary judgment motion must accordingly be denied. This civil action remains set for a jury trial to commence on March 22, 2010. An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan  
United States District Judge